UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL SHUNOCK,

                                    Plaintiff,

                -against-

APPLE, INC.,

                                    Defendant.

Case No. 1:23-cv-08598 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

     This case involves seven design patents, each of which Michael Shunock ("Plaintiff")

alleges are being infringed by millions of devices sold by Apple, Inc. ("Apple" or

"Defendant") around the world.  ECF No. 1 (the "Complaint or "Compl.") ¶¶ 1, 57-133.

Apple asserts several affirmative defenses, ECF No. 14 (from pages 1 through 24, the

"Answer" or "Ans.") ¶¶ 134-145, and fourteen counterclaims, *id.* (from pages 24 through 46,

the "Counterclaims" or "Cnt.") ¶¶ 6-103.  Now before the Court is Plaintiff's motion to

dismiss or strike Defendant's counterclaims and to strike one of Defendant's affirmative

defenses.  ECF No. 20 ("Br.").  For the following reasons, Plaintiff's motion is GRANTED in

part and DENIED in part.

## BACKGROUND[1]

### I.    Factual Background

### A.  Plaintiff's Designs

     On July 5, 2012, Plaintiff filed International Patent Application

No. PCT/CA2012/050454 (the "PCT Application") with the World Intellectual Property

---

[1] Unless otherwise noted, the facts stated herein are taken from the Complaint and the Answer and Counterclaims and accepted as true for the purposes of resolving Plaintiff's motion to dismiss and strike.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010); *see N.Y. Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F. Supp. 3d 216, 229

Organization for a "System and Method for Annotating Images." Compl. ¶¶ 16-17. The PCT Application included the below illustration to show how the invention "may provide information related to ratings." *Id.* ¶¶ 2, 18.



*Id.* ¶ 2.

Plaintiff "used the designs from his PCT Application . . . as the basis for the logo of his company, Spread Media, Inc.," as pictured below.



*Id.* ¶ 19.

### B. Apple Views Plaintiff's Designs

On August 30, 2013, Plaintiff "presented a software application incorporating his designs and their dynamic animation" to Donna Ogier, then-manager for Apple's App Store

---

(S.D.N.Y. 2020) ("These well-established standards apply equally to . . . counterclaims." (quotation marks, citation, and brackets omitted)).

and several of Apple's lifestyle brands.  *Id.* ¶¶ 4, 21.  Plaintiff also displayed his Spread

Media, Inc. logo during this meeting.  *Id.* ¶ 21.  "Ogier specifically complimented Dr.

Shunock on both the design and animation."  *Id.*  Plaintiff and Apple did not commit to

working together after that meeting.  *Id.* ¶ 4.

### C.  Plaintiff Seeks Utility Patent Protection and Trademark Registration

On April 9, 2014, Plaintiff filed a utility patent application (the "Utility Patent

Application") with the U.S. Patent and Trademark Office ("USPTO" or "PTO"), seeking

domestic patent protection related to the claims in the PCT Application.  *Id.* ¶¶ 24-25.

On May 27, 2014, Plaintiff registered a trademark for Spread Media, Inc.'s logo,

consisting of "a centrally positioned circle with a plurality of concentric crescents surrounding

the central circle."  *Id.* ¶ 23 (citation omitted).

### D.  Apple's Activity Rings

On September 2, 2014, Apple filed an application for a design patent related to its

"Activity Rings" design.  *Id.* ¶ 27.  On September 9, 2024, Apple announced the "Apple

Watch."  *Id.* ¶ 28.  The Apple Watch incorporated the "Activity Rings" design to provide a

visual representation, depicted below, of a user's movement and activity statistics.  *Id.* ¶ 5.



*Id.*

On April 24, 2015, Apple officially launched the Apple Watch, which included the

Activity Ring design as a central feature.  *Id.* ¶ 30.  Apple has also integrated the Activity

Rings design into its iPhone products, *id.* ¶¶ 7, 32, promotional webpages, *id.* ¶ 33, marketing campaigns, *id.* ¶¶ 31, 34, and other wellness offerings, *id.* ¶ 35.

Plaintiff became aware of the Activity Rings design in 2016. *Id.* ¶ 37. On July 7, 2017, he "sent Apple a trademark demand letter predicated on his Spread Media logo design." *Id.* ¶ 39. In the letter, Plaintiff asserted that the Activity Rings design was similar to his trademarked logo, that he had created his logo in 2012, and that Apple had reason to know about his design because "both parties were involved with the same design and animation studio in 2012." *Id.*

Apple responded to Plaintiff's trademark demand letter on August 8, 2017, asserting that Plaintiff did not have a colorable trademark-infringement claim. *Id.* ¶ 41.

### E. Plaintiff's Design Patents

About three years later, in November 2020, while his Utility Patent Application was still pending, Plaintiff learned about distinctions between utility patents and design patents. *Id.* ¶ 45. He then applied for seven design patents with the USPTO. *See id.* ¶ 48. On August 25, 2021, in connection with his then-pending design patent applications, Plaintiff submitted an information disclosure statement to the USPTO citing Apple's design patents that Plaintiff believed were directed to the Activity Rings design. Ans. ¶ 140. On December 27, 2021, Plaintiff also filed a "Miscellaneous Submission" with the USPTO, requesting that the USPTO "explicitly grant[]" priority to Plaintiff "[b]ecause of the publication of the priority application [that is, the Utility Patent Application] more than one year prior to the actual filing date of the present application." *Id.* ¶ 138 (first alteration in original). A priority claim would give Plaintiff's seven design patent applications an effective filing date matching that of his Utility Patent Application in April 2014. *See* U.S. Pat. & Trademark Off., Manual of Patent Examining Procedure § 0200.210 (9th ed. 2022) ("Under certain conditions and on fulfilling

certain requirements, a later-filed application for patent filed in the United States may claim the benefit of, or priority to, a prior application filed in the United States or in a foreign country" (citations omitted)).  Apple alleges that "as of December 27, 2021, Dr. Shunock believed that the designs claimed in each of the applications for the [Design] Patents were infringed by one or more Apple designs that Dr. Shunock had submitted" previously to the USPTO, Ans. ¶ 141, and that he also "believed that without the continuation priority claim being granted, one or more Apple design patents . . . would invalidate each of the designs claimed" in his design patent applications, *id.* ¶ 142.

On July 5, 2022, Plaintiff was granted seven design patents (the "Design Patents"). Compl. ¶ 48; *see* ECF Nos. 1-4 through 1-10.  Each of the Design Patents was granted as a continuation of Plaintiff's Utility Patent Application and therefore shares its effective filing date of April 9, 2014.  Compl. ¶ 48.

On November 29, 2022, the USPTO granted the utility patent sought by Plaintiff in the Utility Patent Application.  *Id.* ¶ 50; *see* ECF No 1-11.

### F.  Plaintiff's Demand Letter

On June 26, 2023, Plaintiff informed Apple that it was selling products that he believed infringed the Design Patents.  Compl. ¶ 54.  Apple replied on the same day, and the parties met and conferred several times between June and September 2023.  *Id.* ¶ 55.  Apple denies infringement and continues to use its Activity Rings design in its products.  *Id.* ¶ 56.

## II.   Procedural History

Plaintiff commenced this action on September 29, 2023.  Compl.  Apple answered the Complaint and asserted counterclaims on November 16, 2023.  Ans.; Cnt.  Plaintiff filed the instant motion on December 21, 2023.  Br.; *see also* ECF No. 24 ("Reply").  Apple opposed

the motion on January 18, 2024.  ECF No. 23 ("Opp.").  The Court held oral argument on the

motion on June 14, 2024.  ECF No. 38; June 14, 2024 Oral Argument Transcript ("Tr.").

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule")

12(b)(6), a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court accepts as true all non-

conclusory allegations of fact and draws all reasonable inferences in the nonmovant's favor.

*Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc).  But a court

need not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 555).  A pleading must allege "more than a sheer

possibility that a [party] has acted unlawfully" and more than "facts that are 'merely

consistent with' a [party's] liability."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "[T]he court's

task is to assess the legal feasibility of the [allegations]; it is not to assess the weight of the

evidence that might be offered on either side."  *Lynch v. City of New York*, 952 F.3d 67, 75

(2d Cir. 2020).  Determining whether a pleading states a claim is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*,

556 U.S. at 679.  "These well-established standards apply equally to . . . counterclaims."  *N.Y.

Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F. Supp. 3d 216, 229 (S.D.N.Y. 2020)

(quotation marks, citation, and brackets omitted).

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense

or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

"Motions to strike affirmative defenses under Rule 12(f) are disfavored, and the standard for a

plaintiff to prevail is demanding."  *Federico & Co. v. Zurich Gen. Ins. Malay. Berhad*,

No. 23-cv-04411 (AS), 2024 WL 1804655, at *2 (S.D.N.Y. Apr. 25, 2024) (quoting *Trs. of N.Y.C. Dist. Council v. M.C.F. Assocs., Inc.*, 530 F. Supp. 3d 460, 463-64 (S.D.N.Y. 2021)). "[T]he plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019).  However, "applying the plausibility standard to any pleading is a 'context-specific' task." *Id.* (citation omitted).  Thus, a lesser "degree of rigor" may be applied to testing the pleading of affirmative defenses because "[t]he pleader of a complaint has the entire time of the relevant statute of limitations to gather facts necessary to satisfy the plausibility standard" while "the pleader of an affirmative defense has [significantly less time]." *Id.; see also Carnegie Inst. of Wash. v. Pure Grown Diamonds, Inc.*, Nos. 20-cv-00189 (JSR), 20-cv-00200 (JSR), 2020 WL 5209822, at *3 (S.D.N.Y. Aug. 31, 2020).

## DISCUSSION

Plaintiff brings seven causes of action against Apple, alleging one count of infringement with respect to each of the seven Design Patents.  Compl. ¶¶ 57-133.  Apple's fourteen counterclaims seek a declaration of invalidity and noninfringement as to each of the seven Design Patents.  *See* Cnt.  Plaintiff moves to strike one of Apple's six affirmative defenses and to dismiss all of Apple's counterclaims.  Br.  The Court first analyzes Plaintiff's motion with respect to Apple's affirmative defense and then turns to Apple's counterclaims.

### I.    Motion to Strike Affirmative Defense

Plaintiff moves to strike Apple's fourth affirmative defense, Br. at 14-18, which asserts that Plaintiff's Design Patents are unenforceable due to inequitable conduct, Ans. ¶¶ 137-143.

### 1.  Applicable Law

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011).  "[T]he remedy for inequitable conduct is the 'atomic bomb' of patent law" because "inequitable conduct regarding any single claim renders the entire patent unenforceable." *Id.* at 1288 (citation omitted).

"Inequitable conduct has two separate requirements: materiality and intent." *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017).  Over the years, the Federal Circuit has "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Therasense*, 649 F. 3d at 1290.  As to materiality, "as a general matter, the materiality required to establish inequitable conduct is but-for materiality." *Therasense*, 649 F.3d at 1291.  "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.*; *accord Regeneron*, 864 F.3d at 1351 ("Determining but-for materiality requires that the court place itself in the shoes of a patent examiner and determine whether, had the reference(s) been before the examiner at the time, the claims of the patent would have still issued.").  "Although but-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct, [the Federal Circuit] recognizes an exception in cases of affirmative egregious misconduct." *Therasense*, 864 F.3d at 1292.

As to intent, the facts pleaded must allow the court to reasonably infer "that the patentee acted with the specific intent to deceive the PTO." *Id.*  "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Regeneron*, 864 F.3d at 1350-51 (citation

omitted).  Rather, in the case of nondisclosure or an omission, the patent applicant "must have

made a deliberate decision to withhold" the reference in order to deceive the USPTO.  *Cognex*

*Corp. v. Microscan Sys., Inc.*, 990 F. Supp. 2d 408, 418 (S.D.N.Y. 2013); *Regeneron*, 864

F.3d at 1350.  "Inequitable conduct allegations are rooted in fraud and thus must be pled with

particularity under Rule 9(b)."  *Carnegie Inst. of Wash.*, 2020 WL 5209822, at *3.  "The

pleading must state 'the specific who, what, when, where, and how of the material

misrepresentation or omission committed before the PTO.'"  *Id.* (quoting *Exergen Corp. v.*

*Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009)).

## II.    Analysis

In support of its inequitable-conduct affirmative defense, Apple focuses on the

Miscellaneous Submission filed by Plaintiff on December 27, 2021 as "a purposefully

incomplete affirmative representation" to the USPTO which was "voluntary and

unnecessary."  Ans. ¶¶ 139, 143.  Apple alleges that Plaintiff affirmatively and materially

misled the UPSTO through his Miscellaneous Submission by requesting that the USPTO

grant his priority claim without informing the USPTO that: (1) he intended to assert that the

Apple designs infringed his Design Patents; and (2) if his Design Patents were not granted

priority, they would be invalidated by the prior Apple designs.  *Id.* ¶¶ 138, 140-143; Opp. at

18.  According to Apple, Plaintiff filed the Miscellaneous Submission in this manner to

"discourage" the patent examiner from considering the Apple design references in examining

his applications for the Design Patents. *See* Opp. at 16; Ans. ¶ 143.

Plaintiff urges the Court to strike this affirmative defense because Apple failed to

adequately plead but-for materiality.  Br. at 14.  Apple responds that it was not required to

plead but-for materiality because Plaintiff engaged in affirmative egregious misconduct, and,

in the alternative, that it did plead but-for materiality.  Opp. at 15-20.

Looking to but-for materiality first, the Court agrees with Plaintiff that Apple's allegations lack any assertion that Plaintiff withheld any information that would have affected the issuance of the Design Patents.  To the contrary, Apple acknowledges that Plaintiff previously disclosed the Apple designs to the USPTO, Ans. ¶ 140; Tr. at 44:12-18, and admits that there is no requirement to inform the patent examiner that materials a patent applicant previously submitted to the examiner may constitute prior art or otherwise "draw the examiner's attention to" the previously submitted materials, Tr. at 44:17-46:24.  Thus, there can be no suggestion that the USPTO was unaware of those same references due to Plaintiff's inequitable conduct.  *Cf. Therasense*, 649 F.3d at 1291 ("When an applicant *fails to disclose* prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the *undisclosed* prior art" (emphases added)).

The Court is also unpersuaded by Apple's argument that the USPTO would have been more likely to examine (or examine more closely) the Apple designs if the USPTO had been aware of Plaintiff's intent to assert his patent rights against Apple.  Apple has not identified – and the Court has not located – any authority suggesting that a patent applicant must disclose to the USPTO that the applicant intends to assert its patent rights against an alleged infringer should the patent be granted.  *Cf.* 37 C.F.R. § 1.56 (applicable regulations describing patent applicant's duty to disclose information material to patentability, not identifying an intent to sue or otherwise assert patent rights as a necessary disclosure); *see Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 875 (Fed. Cir. 1988) ("[T]here is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market.").  Indeed, Apple agreed at oral argument that "[w]e don't dispute the general proposition that patent applicants are not,

again as a general matter, required to say we believe that this product or design in this case infringes." Tr. at 46:22-24.

Apple cites the Manual of Patent Examining Procedure for the proposition that "where there exist intervening references that are prior art based on the filing date of a patent, but which are not prior art if the patent is granted an earlier priority date, the patent examiner must apply greater scrutiny in considering the priority claim." Opp. at 19. Apple therefore asserts that "review of Apple's designs was . . . material to assessing [Plaintiff's] priority date claim." *Id.* The section of the Manual of Patent Examining Procedure cited by Apple, § 1504.20, notes only that the filing date of the earlier application will not be considered by the examiner unless it is needed, such as because of intervening prior art. Manual of Patent Examining Procedure, *supra*, § 1504.20 ("[U]nless the filing date of the earlier application is needed, such as with the existence of intervening prior art, the entitlement to benefit in the continuation-in-part application . . . will not be considered by the examiner."). Plaintiff requested a priority claim to his earlier application in his Miscellaneous Submission, ECF No. 20-2, and earlier provided the intervening Apple designs to the USPTO in connection with the applications for the Design Patents. Ans. ¶ 140. Therefore, as relevant to the cited provision of the Manual of Patent Examining Procedure, the alleged intervening prior art was before the USPTO for its consideration in connection with the examiner's evaluation of Plaintiff's continuation-in-part application and the requested priority date. *See McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 924 (Fed. Cir. 2007) ("[T]he content of" "an applicant's disclosure of a prior art reference . . . is presumed to be before the examiner" (citation omitted)).

Apple further asserts that its affirmative defense should not be stricken because its pleading "expressly alleges materiality." Opp. at 17 (citing Ans. ¶ 143; emphasis omitted).

However, merely stating that a factual allegation is material does not make it so, and, as set forth above, Apple's factual allegations as pleaded presently do not plausibly allege materiality. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (brackets, quotation marks, and citation omitted)).

Finally, Apple argues that it did not need to plead but-for materiality because Plaintiff's conduct in connection with the Miscellaneous Submission was "egregious misconduct." Opp. at 16-17. "Although but-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct," there is an "exception in cases of affirmative egregious misconduct," including, but not limited to, when the patentee has filed an unmistakably false affidavit. *Therasense*, 649 F.3d at 1292. However, as discussed, Plaintiff already provided the Apple designs directly to the USPTO in connection with his applications for the Design Patents, so any repeated reference to them in the Miscellaneous Submission would have been cumulative. Ans. ¶ 140; *see Crye Precision LLC v. Duro Textiles, LLC*, 112 F. Supp. 3d 69, 81 (S.D.N.Y. 2015) (dismissing inequitable conduct counterclaim because the information allegedly withheld was "cumulative of information that the PTO examiner already had"). Apple also has not pointed to any requirement that Plaintiff's Miscellaneous Submission draw the examiner's attention to the Apple designs that it previously submitted. Tr. at 45:18-46:3 (acknowledging at oral argument that there is no such requirement). Indeed, even if Plaintiff had not previously provided the Apple references to the USPTO, the Federal Circuit has held that "mere nondisclosure of prior art references to the PTO [or] failure to mention prior art references in an affidavit" do not constitute "affirmative egregious misconduct." *Therasense*, 649 F.3d at 1292-93. Whether there is a

basis for finding that Plaintiff's patent is invalid based on prior art or otherwise is a separate

question from whether Apple has plausibly pleaded that Plaintiff engaged in affirmative

egregious misconduct before the USPTO.  Plaintiff's alleged failures to draw the patent

examiner's attention to the particular Apple designs that Plaintiff already submitted to the

USPTO in connection with his application or to inform the USPTO that he believed his

Design Patents would be invalid if he was not granted priority are not the type of "deliberately

planned and carefully executed schemes to defraud the PTO and the courts" that the Federal

Circuit associates with "affirmative egregious misconduct."  *Id.* at 1292 (quotation marks,

brackets, and citation omitted).

     The Court recognizes Defendant's argument that Plaintiff must clear a high bar to

prevail on a motion to strike an affirmative defense.  *See Federico*, 2024 WL 1804655, at *2.

But as presently pleaded here, and especially where the Federal Circuit has sought to tighten

the standards for a claim of inequitable conduct, Plaintiff has not set forth a plausible

affirmative defense for inequitable conduct and the Court will strike this defense as presently

pleaded.  *See Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 3472597, at

*7 (S.D.N.Y. June 25, 2020) (striking affirmative defense and counterclaim for inequitable

conduct, recognizing that "the standards for making out such a claim are stringent"); *Signify*

*North America Corporation v. Reggiani Lighting USA, Inc.*, No. 18-cv-11098, 2020 WL

1331919, at *5, *10 (S.D.N.Y. Mar. 23, 2020) (striking affirmative defense and dismissing

counterclaim of inequitable conduct because the allegedly withheld reference was cumulative

to what was already disclosed to the patent examiner).

     Apple "requests leave to amend its pleadings" if the Court grants Plaintiff's motion.

Opp. at 20.  Apple has not yet had an opportunity to amend and therefore Apple is granted

leave to amend its affirmative defense of inequitable conduct within sixty days of this Order.

*Cf. Carnegie Inst. Of Wash.*, 2020 WL 5209822, at *3 (evaluating affirmative defense of inequitable conduct that was amended and pleaded after some discovery was conducted, including the deposition of an inventor of the patent in dispute).

## III.   Motion to Dismiss or Strike Counterclaims

Apple brought fourteen counterclaims – seven seeking a declaration of invalidity of each of the Design Patents, and seven seeking a declaration of noninfringement of each of the Design Patents.  Cnt.  Plaintiff moves to dismiss the counterclaims seeking declarations of invalidity for failure to include sufficient factual allegations, Br. at 8-12, and to strike, under Rule 12(f), the counterclaims seeking declarations of noninfringement as mirror images of Plaintiff's affirmative infringement claims, *id.* at 12-14; *see* Fed. R. Civ. Pr. 12(f) ("court may strike from a pleading . . . any redundant . . . matter").  The Court will address each argument in turn.

### A.  Invalidity Claims

#### 1.   Applicable Law

Invalidity counterclaims must meet *Twombly* and *Iqbal*'s pleading standard.  *See Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13-cv-00538 (PAE), 2013 WL 4016302, at *5 (S.D.N.Y. Aug. 7, 2013) (articulating standard); *accord Crye*, 112 F. Supp. 3d at 79-80; Tr. at 3:24-25 (Plaintiff asserting "that the *Twombly*/*Iqbal* standard for plausibility pleading applies to counterclaims for invalidity"); *id.* at 31:12-14 (Apple agreeing "that the *Twombly*/*Iqbal* standard applies").  When a party challenges the validity of a design patent based on prior art, "the district court should do a side-by-side comparison of the two designs to determine if they create the same visual impression."  *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1314 (Fed. Cir. 2013); *accord LKQ Corp. v. GM Glob. Tech. Ops. LLC*, 102 F.4th 1280, 1298 (Fed. Cir. 2024) ("[I]n addressing the differences between

the claimed design and prior art designs for validity purposes, we compare the visual appearance of the claimed design with prior art designs, albeit from the perspective of an ordinary designer in the field of the article of manufacture.").

### 2. Analysis

Each of Apple's invalidity counterclaims asserts that the applicable Design Patent "fails to meet the conditions of patentability and/or otherwise comply with one or more provisions of 35 U.S.C. §§ 101, *et seq.*, including §§ 101, 102, 103, 112, 171, and/or any other applicable statutory provision of Title 35 of the United States Code and/or for claiming functional or generic elements."  Cnt. ¶¶ 7, 21, 35, 49, 63, 77, 91.  Apple identifies four prior art references that arguably invalidate the Design Patents and/or Plaintiff's priority claim, *id.* ¶¶ 8-9, 22-23, 36-37, 50-51, 64-65, 78-79, 92-93.  Plaintiff argues that these counterclaims must be dismissed because Apple fails "to offer sufficient factual allegations" to support the conclusion that the Design Patents must be invalidated under various sections of the Patent Act.  Br. at 9-11.  The Court does not agree.

Apple identified the specific prior art, including by excerpting particular figures, that it asserts invalidate Plaintiff's Design Patents.  Cnt. ¶¶ 8-9, 22-23, 36-37, 50-51, 64-65, 78-79, 92-93.  This identification puts Plaintiff on notice of the claims against him, which is all that is required at this stage.  *Twombly*, 550 U.S. at 555 ("[Rule] 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." (quotation marks, citation, and ellipses omitted)).  This is particularly so because the standard for design-patent validity turns on "compar[ing] the visual appearance of the claimed design with prior art designs . . . from the perspective of an ordinary designer in the field." *LKQ Corp.*, 102 F.4th at 1298.

Plaintiff has not identified any cases where a court dismissed an entire invalidity claim or counterclaim for insufficient factual allegations where the claimant provided examples of prior art that it alleged invalidated the patent's claims.  *See generally* Br.  Indeed, in Plaintiff's cited cases, invalidity claims did not meet the *Twombly-Iqbal* pleading standard where the defendant "d[id] not identify any prior art" that rendered the patents invalid.  *Crye*, 112 F. Supp. 3d at 79; *see Aster Graphics, Inc. v. Static Control Components, Inc.*, No. 17-cv-01167, 2018 WL 2425973, at *7 (C.D. Cal. Feb. 12, 2018) (dismissing invalidity claims as insufficiently pleaded where claimant did not allege "any facts" and differentiating that claim from invalidity challenge where claimant "assert[ed] that a prior reference . . . render[ed] the [applicable patents] invalid"); *Orientview*, 2013 WL 4016302, at *7 (invalidity counterclaim did not provide sufficient factual allegations because it was a "bare assertion . . . devoid of any factual content whatsoever" and said "nothing about the basis on which [defendant] contends that the [relevant] patent is invalid").

On the other hand, numerous examples abound where the pleadings of a party challenging patent validity were deemed sufficient when they provided prior art that allegedly invalidated the patent at issue.  *See, e.g.*, *Trutek Corp. v. BlueWillow Biologics, Inc.*, No. 21-cv-10312, 2021 WL 4552267, at *2 (E.D. Mich. Oct. 5, 2021) ("Defendants have satisfied the *Iqbal* and *Twombly* standard because Defendants specified why in their view the . . . patent is invalid.  Defendants identified four patents and two patent applications that reference prior art . . . [and] have therefore shown more than bare legal conclusions and identified plausible facts that place Plaintiff on notice about which patents and patent applications will be used to argue the . . . patent is invalid because of prior art references."); *CryoLife, Inc. v. C.R. Bard, Inc.*, No. 14-cv-00559, 2015 WL 1069397, at *4 (D. Del. Mar. 10, 2015) ("[The party challenging invalidity] identifies the specific statutory sections regarding invalidity (§§ 102,

103, and/or 112) and provides examples of invalidating prior art. . . .  The court concludes that [the party challenging invalidity] has sufficiently pleaded invalidity."); *Automated Layout Techs., LLC v. Precision Steel Sys., LLC*, No. 20-cv-03127, 2021 WL 1820433, at *4 (D. Neb. May 6, 2021) (counterclaim which included "specific references to prior art" sufficed to state a claim).  Similarly, the Court finds that Apple's identification of prior art allegedly invalidating the Design Patents suffices to put Plaintiff on notice of the claims against him.[2]

The sufficiency of Apple's counterclaims is apparent from their comparison to Plaintiff's infringement allegations.  In its Complaint, Plaintiff provides photos of Apple's allegedly infringing design – the Activity Rings – and then asks the Court to compare Dr. Shunock's design and the Activity Ring feature.  Compl. ¶ 30; *see id.* ¶¶ 61, 72, 83, 94, 105, 116, 127 (side-by-side comparisons between the seven Design Patents and Apple's allegedly infringing design).  Just as Plaintiff's pleading is sufficient to notify Apple of the infringement claims against it, the similar level of specificity in Apple's pleadings is sufficient to notify Plaintiff of the invalidity claims against him.

The Court is cognizant of Plaintiff's argument that the patent examiner already considered the allegedly invalidating prior art references during the prosecution of the Design Patents, Br. at 10-11, and recognizes the presumption that issued patents are presumed valid, *see* 35 U.S.C. § 282; *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011) ("Under § 282 of the Patent Act of 1952, a patent shall be presumed valid and the burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." (quotation marks, brackets, and citation omitted)).  Although Apple will need to overcome the

---

[2] Plaintiff's contention that the prior art identified by Defendants are simply "logos" as opposed to graphical user interfaces, Tr. at 5:1-3, may be relevant to the substantive merits of the invalidity claims but is a premature basis to dismiss the invalidity counterclaims at the pleading stage.

presumption of validity at a later stage, it has met its burden here at the pleading stage. *Cf.*
*Orientview*, 2013 WL 4016302, at *6 (applying *Iqbal-Twombly* notice pleading standard to
invalidity counterclaims); *Trutek Corp.*, 2021 WL 4552267, at *2 (identification of prior art
was sufficient to plead patent invalidity).

Finally, having held that Plaintiff is on notice of Apple's invalidity claims against him
based on the identified prior art, and because Plaintiff will receive further information from
Apple during the discovery process as to its invalidity theories – indeed, Apple already served
850 pages of invalidity contention materials upon Plaintiff a month ago, Tr. at 35:17-36:3 –
the Court declines to further parse through the various invalidity theories within Apple's
overall invalidity counterclaims for purposes of this motion to dismiss. *See, e.g.*, *CryoLife*,
2015 WL 1069397, at *4 (court did not separately examine invalidity theories in holding that
invalidity counterclaim was adequately pleaded when counterclaimant alleged that issued
patents were invalid under 35 U.S.C. "§§ 102, 103 and/or 112" and identified prior art);
*Parker-Hannifin Corp. v. Testo, Inc.*, No. 22-cv-00135, 2023 WL 3059865, at *2 (E.D. Pa.
Apr. 24, 2023) (taking same approach).

For these reasons, the Court declines to dismiss Apple's invalidity counterclaims.

**B.  Noninfringement Claims**

Plaintiff argues that Apple's seven counterclaims seeking declarations of
noninfringement should be stricken under Rule 12(f) because the claims are redundant mirror
images of Plaintiff's affirmative infringement claims.  Br. at 12-14; *see* Fed. R. Civ. Pr. 12(f)
("court may strike from a pleading . . . any redundant . . . matter").  Apple objects and, for the
following reasons, the Court will not dismiss the noninfringement counterclaims at this time.

Plaintiff argues that "[a] redundant counterclaim may be dismissed 'when a
counterclaim is merely the "mirror image" of an opposing party's claim and the counterclaim

serves no independent purpose.'" *Orientview*, 2013 WL 4016302, at *1 (quoting *Worldwide Home Prods., Inc. v. Bed Bath & Beyond, Inc.*, No. 11-cv-03633 (LTS), 2013 WL 247839, at *2 (S.D.N.Y. Jan. 22, 2013)).  In examining this issue, courts in this district have looked to two early Second Circuit cases dating back over 80 years – *Leach v. Ross Heater & Manufacturing Co.*, 104 F.2d 88 (2d Cir. 1939) and *Larson v. General Motors Corp.*, 134 F.2d 450 (2d Cir. 1943).  *See, e.g.*, *Ferring B.V. v. FERA Pharms., LLC*, No. 13-cv-04640 (SJF) (AKT), 2014 WL 4829053, at *5-6 (E.D.N.Y. Aug. 13, 2014) (examining *Leach* and *Larson* in the context of plaintiff's motion to strike trademark noninfringement and invalidity counterclaims as redundant mirror images of plaintiff's claims), *report and recommendation adopted*, 2014 WL 4829458 (E.D.N.Y. Sept. 29, 2014); *Josie Maran Cosms., LLC v. Shefa Grp. LLC*, 624 F. Supp.3d 281, 287-88 (E.D.N.Y. 2022) (same); *Orientview*, 2013 WL 4016302, at *4 (reviewing *Leach* and *Larson* in context of motion to strike patent noninfringement declaratory-judgement counterclaim); Tr. at 57:11-13 (Plaintiff acknowledging the need to square *Leach* and *Larson* with this present dispute).

In *Leach v. Ross Heater & Manufacturing Co.*, the plaintiff asserted a patent infringement claim and the defendant brought both invalidity and noninfringement counterclaims.  104 F.2d at 89.  The plaintiff voluntarily dismissed his infringement claim before a ruling on the merits, and the district court also granted the plaintiff's motion to dismiss the defendant's counterclaims.  *Id.* at 98.  However, the Second Circuit reversed the district court's decision, and explained that "[t]he facts set forth in the counterclaim, if pleaded in a complaint in a suit brought independently and prior to a suit for infringement, would state a case for relief by declaratory judgment."  *Id.* at 91.  The Second Circuit noted that "[t]he need for declaratory judgement is diminished, it is true, by the fact that the patentee has commenced his suit, but the need cannot be said to have wholly disappeared; the patentee

may, for all that the defendant knows, withdraw his suit without prejudice and continue broadcasting assertions of infringement." *Id.* at 91.  Therefore, the Second Circuit held that the district court had erred in dismissing the lawsuit and the counterclaim on the plaintiff's motion.  *Id.* at 92.

A few years later, in *Larson v. General Motors Corp.*, the plaintiffs claimed patent infringement against the defendant, who filed a counterclaim seeking a declaration that the patent was invalid and to enjoin the plaintiffs from threatening infringement.  134 F.2d at 452.  The plaintiffs ultimately consented to judgment on the merits that the defendant had not infringed the patent.  *Id.*  The district court therefore entered judgment on the merits that the defendant did not infringe and also continued on to declare the patent invalid and enjoined the plaintiffs from threatening to sue alleged infringers.  *Id.* at 452.  The Second Circuit found that it was error for the district court to have continued to adjudicate the validity of the patent once the plaintiffs consented to judgment on merits of their infringement claim.  *Id.* at 453.  While the district court still had constitutional jurisdiction, the Second Circuit held that "the validity of the patent ceased to have any substantial importance to the parties as soon as the plaintiffs consented to judgment on the merits" of the infringement claim.  *Id.* at 453.  Although it was proper for the district court to grant defendant's counterclaim insofar as it sought an injunction forbidding the plaintiff from asserting infringement, the Second Circuit held that a declaration of invalidity was not "necessary" and explained that the plaintiffs had a "recognizable interest that the validity of the patent should not be considered."  *Id.* at 454.  Therefore, the judgment granting relief on the counterclaim was modified to strike the declaration as to the validity of the patent.  *Id.* at 454.  The *Larson* court distinguished *Leach*, noting that the "judgment which we held not to bar a declaratory action" in *Leach* "was not upon the merits and did not bar a second action."  *Id*. at 453-54.

The present case is more akin to *Leach* than *Larson* because there has been no adjudication on the merits of Plaintiff's infringement claim. *Cf.* Tr. at 56:22-25 (Plaintiff acknowledging that "for our purposes here, given the procedural posture in this case, *Leach* is ultimately slightly more on point or instructive for the purposes of this counterclaim."). Just as in *Leach*, Apple seeks declaratory judgment of noninfringement as well as invalidity, claims that would continue to exist absent a dismissal on the merits of Plaintiff's infringement claims. *See Brookfield Off. Props. Inc. v. Hotel*, No. 16-cv-01854 (VM) (JCF), 2016 WL 6906713, at *5 (S.D.N.Y. Nov. 18, 2016) (denying motion to dismiss noninfringement declaratory-judgment counterclaim as mirror image of infringement claims because "if the case were dismissed without prejudice, the defendants would be open to liability in the future"); *cf. Sulzer Mixpac AG v. DXM Co.*, No. 19-cv-09404 (LAP), 2022 WL 4280343, at *7 (S.D.N.Y. Sept. 15, 2022) (dismissing counterclaim for declaration of noninfringement because the court granted judgment on the pleadings on plaintiff's infringement claims and therefore "following this Court's judgment on the merits it can face no future threat of trademark infringement"). As the Second Circuit opined in *Leach*:

> It is not disputed that if the counterclaim is dismissed and the plaintiff permitted to withdraw his suit, as ordered below, the defendant may promptly sue the plaintiff for declaratory judgment on the same facts as those shown in the counterclaim. We see nothing useful in forcing the defendant thus to waste time and seek out the plaintiff in a distant jurisdiction. While it may turn out at trial that a decision on the merits of the plaintiff's [claim] will dispose of the controversy between the parties completely and render declaratory judgment unnecessary, in which case the counterclaim may be dismissed, we are of opinion that it was error to strike out the counterclaim at so early a stage.

104 F.2d at 91-92.[3]

Following this direction, the *Orientview* court declined to strike the defendant's noninfringement counterclaim where the defendant also challenged the validity of the asserted patent, because "[w]ere the case to be dismissed short of a ruling on the merits, [the defendant] would remain vulnerable to liability on the same claims."  2013 WL 4016302, at *5.  Therefore, "a case or controversy would still exist in connection with the counterclaim." *Id.* (citation omitted).  Similarly, in *Town & Country*, the court denied a motion to dismiss a noninfringement counterclaim over the plaintiffs' protestations that the counterclaim was a mirror image of plaintiffs' infringement claim.  2020 WL 3472597, at *14.  The court explained that, in the defendants' answer, "[d]efendants challenge[d] the validity of the patent they are alleged to have infringed . . . .  Therefore, if [p]laintiffs were to withdraw their claims prior to a ruling on the merits, [d]efendants would remain vulnerable to liability on the same claims and thus, a case or controversy would still exist in connection with the declaratory judgment counterclaims." *Id.* (quotation marks, citations, and brackets omitted).  So too here.

Plaintiff argues, for the first time in his reply brief, that these counterclaims should be stricken because Plaintiff cannot voluntarily dismiss this case absent a stipulation signed by Apple under Fed. R. Civ. P. 41(a)(1)(A)(ii), and therefore, the issue of patent infringement will be litigated on the merits.  Reply at 7.  As a threshold matter, arguments raised for the first time on reply need not be considered by the Court. *See United States v. Fayton*, --- F. Supp. 3d ----, 2023 WL 8275924, at *3 (S.D.N.Y. Nov. 30, 2023).  In any event, Plaintiff's argument is unpersuasive because his infringement claims may still be voluntarily dismissed

---

[3] Notably, even in *Larson*, the Second Circuit affirmed the defendant's counterclaim for declaratory relief as to noninfringement despite judgment on the merits of plaintiff's mirror image claim of patent infringement.  134 F.2d at 452, 454 (affirming judgment on counterclaim to enjoin plaintiffs from threatening defendant or customers with infringement).

by Plaintiff – even over Apple's objection – by court order, so long as Apple's counterclaims "can remain pending for independent adjudication." Fed. R. Civ. P. 41(a)(2); *see* Tr. at 12:12-23 (Plaintiff agreeing "that is a possibility under the text of this rule.").

Plaintiff relies on *Arista Records LLC v. Usenet.com, Inc*., which is distinguishable. *See* Br. at 12-13. There, the court applied *Leach* and *Larson* to counterclaims asserted under the Digital Media Control Act ("DMCA"), not patent noninfringement counterclaims. No. 07-cv-08822 (HB), 2008 WL 4974823, at *3-4 (S.D.N.Y. Nov. 24, 2008). The court explained that the asserted DMCA counterclaims were duplicative of the defendants' asserted DMCA affirmative defenses, and that the DMCA did not provide an affirmative cause of action. *Id*. at *4. Therefore, the court dismissed the counterclaims because "[i]f the plaintiff were to dismiss its infringement claims," the DMCA counterclaims "could not stand on [their] own and there would be no remaining case or controversy." *Id.* Here, it is not the case that the infringement counterclaims "could not stand on their own" because, unlike the DMCA, a declaratory judgment of noninfringement under the Patent Act can constitute an independent cause of action.[4]

It may well be that the Court will concurrently resolve Apple's noninfringement declaratory-judgment counterclaims through its adjudication of Plaintiff's infringement claims. However, it is presently unknown how this case will ultimately proceed. As the Second Circuit has noted, "[t]he commencement of suit by the patentee does not necessarily mean that the controversy between him and the defendant is about to be determined on the

---

[4] Plaintiff also relies on *Worldwide Home Prods., Inc. v. Bed Bath and Beyond, Inc.*, No. 11-cv-03633 (LTS), 2013 WL 247839, at *3 (S.D.N.Y. Jan. 22, 2013). *See* Br. at 12-13. The Court is not persuaded by the abbreviated discussion in *Worldwide* given the direction of the Second Circuit in *Leach*.

merits." *Leach*, 104 F.2d at 91.  Given the present controversy as to infringement of the Plaintiff's Design Patents and Apple's right to seek declaratory judgment of noninfringement, *see Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 176 (1965) ("one need not await the filing of a threatened suit by the patentee; the validity of the patent may be tested under the Declaratory Judgment Act"), Apple's declaratory-judgment counterclaim serves a useful purpose and shall remain in this litigation.[5]

For these reasons, the Court declines to dismiss or strike Apple's noninfringement counterclaims.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED in part and DENIED in part.  Plaintiff's motion to strike Apple's affirmative defense of inequitable conduct is granted, with leave to replead the defense within 60 days.  Plaintiff's motion to dismiss or strike Apple's counterclaims is denied.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 19.

Dated: June 21, 2024
      New York, New York

                      SO ORDERED.

                      JENNIFER L. ROCHON
                      United States District Judge

---

[5] Taking Plaintiff at his word that he has no intention of dismissing his infringement claims, Tr. at 12:24-13:1, there may ultimately be no practical impact of this motion with respect to Apple's noninfringement counterclaims. While Plaintiff claims that this motion was filed to "streamline what's going on here," Tr. at 13:8-16, this motion practice has certainly not "streamline[d]" the adjudication of this case.