UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL SHUNOCK,

                Plaintiff,

        -against-

APPLE, INC.,

                Defendant.

Case No. 1:23-cv-08598 (JLR)

**<u>OPINION & ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Michael Shunock ("Plaintiff" or "Shunock") brings this action against Apple, Inc. ("Defendant" or "Apple") seeking damages and a declaratory judgment that each of his seven asserted design patents is valid and enforceable, that Apple has infringed one or more claims of each patent, and that the alleged infringement is willful.  *See generally* Dkt. 1 ("Compl."); U.S. Patent No. D956,802, Dkt. 1-4 (the "'802 Patent"); U.S. Patent No. D956,803, Dkt. 1-5 (the "'803 Patent"); U.S. Patent No. D956,804, Dkt. 1-6 (the "'804 Patent"); U.S. Patent No. D956,805, Dkt. 1-7 (the "'805 Patent"); U.S. Patent No. D956,806, Dkt. 1-8 (the "'806 Patent"); U.S. Patent No. D956,807, Dkt. 1-9 (the "'807 Patent"); U.S. Patent No. D956,808, Dkt. 1-10 (the "'808 Patent") (collectively, the "Asserted Patents"). Apple responded with several affirmative defenses and fourteen counterclaims.  *See generally* Dkt. 14 ("Ans.").

In connection with this dispute, the parties have asked the Court to construe the disputed claims of the Asserted Patents.  The Court held a lengthy *Markman* hearing on December 12, 2024.  *See generally Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ("[T]he construction of a patent . . . is exclusively within the province of the court." *Id.* at 372.).  The parties presented arguments using demonstrative slide decks but, at their

election, did not offer live witness testimony. The Court's constructions of the disputed claims are set forth below.

## I. <u>BACKGROUND</u>

### A. Factual Background

On July 5, 2012, Shunock filed an international patent application (the "Priority Application") pursuant to the Patent Cooperation Treaty ("PCT") for a "System and Method for Annotating Images." PCT Application No. PCT/CA2012/050454, Dkt. 82-13; *see* Int'l Patent Application Publ'n No. WO 2013/003957 (Jan. 10, 2013), Dkt. 1-1. On April 9, 2014, Shunock filed a national stage application with the U.S. Patent and Trademark Office ("USPTO"), for a utility patent based on the PCT application, seeking domestic patent protection for his invention. Compl. ¶¶ 24-25 (citing 35 U.S.C. § 371); *see* U.S. Patent Application Publ'n No. 2014/0236720, Dkt. 1-3; U.S. Patent No. 11,514,101 (issued Nov. 29, 2022), Dkt. 1-11. The following year, on April 24, 2015, Apple launched the Apple Watch, Compl. ¶ 30, which incorporated the Activity Ring feature, whose design Shunock alleges is an infringement of the Asserted Patents, *id.* ¶¶ 8-9, 51. On August 25, 2021, Shunock filed a design-patent application for each Asserted Patent as a continuation of the national stage application, seeking to claim priority to the earlier filing date of the Priority Application. *Id.* ¶¶ 44-50 (citing 35 U.S.C. § 120); *see* Asserted Patents (issued July 5, 2022).

There are seven Asserted Patents at issue in this case — the '802 Patent, the '803 Patent, the '804 Patent, the '805 Patent, the '806 Patent, the '807 Patent, and the '808 Patent — each of which Shunock alleges is being infringed by millions of Apple Watch and iPhone devices sold around the world. *See* Compl. ¶¶ 1, 42-43, 51-53. Each Asserted Patent has the same claim — an "ornamental design for a display screen with graphical user interface, as shown and described." *See* Asserted Patents at claim.

The Asserted Patents can be further divided into two groups based on their descriptions. The description in each of the '802, '805, and '808 Patents is as follows:

> The FIGURE is a front view of a display screen with graphical user interface showing our new design. The even-length broken lines illustrating portions of the graphical user interface form no part of the claimed design. The uneven-length broken line illustrating a display screen forms no part of the claimed design.

*See* '802 Patent, '805 Patent, and '808 Patent at description.

The description in each of the '803, '804, '806, and '807 Patents is as follows (differing only insofar as the number of shaded regions in each accompanying illustration):

> The FIGURE is a front view of a display screen with graphical user interface showing our new design. The grayscale contrast between the [two / three] shaded regions represents a contrast in appearance. The even-length broken lines illustrating portions of the graphical user interface form no part of the claimed design. The uneven-length broken line illustrating a display screen forms no part of the claimed design.

*See* '803 Patent and '807 Patent at description ("three shaded regions"); '804 Patent and '806 Patent at description ("two shaded regions").

Each Asserted Patent is accompanied by a single Figure as set forth below:



Dkt. 80 at 8 (reproducing Asserted Patents at fig.).

4

**B.  Procedural History**

Shunock filed his complaint on September 29, 2023.  *See* Compl.  Apple answered and filed fourteen counterclaims on November 16, 2023.  *See* Ans.  Shunock filed a motion to dismiss the counterclaims and to strike one of Apple's affirmative defenses on December 21, 2023, Dkt. 19, which the Court granted in part and denied in part on June 21, 2024, Dkt. 63 (denying motion to dismiss and granting motion to strike).  The parties filed a joint claim-construction chart on May 31, 2024.  Dkt. 39 ("Chart").  Shunock filed his opening claim-construction brief on September 20, 2024, Dkt. 79 ("Shunock Br."); Apple filed its response on October 18, 2024, Dkt. 80 ("Apple Br."); and Shunock filed his reply on October 25, 2024, Dkt. 83 ("Shunock Reply Br.").  On December 12, 2024, the Court held a *Markman* hearing. *See generally* Dkt. 92 ("Markman Tr.").

**II.    LEGAL STANDARD**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  When parties dispute the scope of a patent claim, the court partakes in claim construction, an exercise that "falls 'exclusively within the province of the court,' not that of the jury."  *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015) (quoting *Markman*, 517 U.S. at 372).  "[T]he construction of claims is simply a way of elaborating the normally terse claim language[] in order to understand and explain, but not to change, the scope of the claims."  *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (alterations in original) (quoting *Scripps*

*Clinic v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991), *overruled on other grounds*, *Abbott Lab'ys v. Sandoz, Inc*., 566 F.3d 1282 (Fed. Cir. 2009)).

### A. The Claim-Construction Process

Courts consider two forms of evidence when construing claims: intrinsic evidence and extrinsic evidence.  First, courts consider "intrinsic evidence of record," which encompasses "the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see also Phillips*, 415 F.3d at 1317 ("The prosecution history, which we have designated as part of the 'intrinsic evidence,' consists of the complete record of the proceedings before the [USPTO] and includes the prior art cited during the examination of the patent." (citing *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 399 (Ct. Cl. 1967))).  Second, courts may consider extrinsic evidence, which includes evidence that "is external to the patent and file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles." *Vitronics*, 90 F.3d at 1584.

"[I]ntrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics*, 90 F.3d at 1582.  In construing the language of a claim, disputed terms "'are generally given their ordinary and customary meaning,' which is 'the meaning that the term would have to a person of ordinary skill in the art [a "POSITA"] in question at the time of the invention.'" *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1022 (Fed. Cir. 2020) (quoting *Phillips*, 415 F.3d at 1312-13).  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.  As the claims are part of a "fully integrated written instrument,"

6

the specifications are a critical piece of intrinsic evidence.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370.  The Federal Circuit has held that "the specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582).

While the Federal Circuit "has long 'emphasized the importance of the intrinsic evidence in claim construction," it has "also 'authoriz[ed] district courts to rely on extrinsic evidence' in certain scenarios."  *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1372 (Fed. Cir. 2022) (quoting *Phillips*, 415 F.3d at 1317).  In particular, "extrinsic evidence and expert testimony can help to educate the court concerning the invention and the knowledge of persons of skill in the field of the invention," *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 994 (Fed. Cir. 2024) (quoting *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1357 (Fed. Cir. 2006)), and a court may consult it "to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field," *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999); *see also Sci. Applications Int'l Corp. v. United States*, 169 Fed. Cl. 643, 706-09 (2024) (consulting expert testimony to "[c]orroborate[]" the court's construction).  However, extrinsic evidence "is generally of less significance than the intrinsic record" and "may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'"  *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016) (quoting *Phillips*, 415 F.3d at 1324).  Extrinsic evidence "is generally 'less reliable' for claim construction purposes than the intrinsic record for several reasons."  *Nintendo*, 29 F.4th at 1372 (quoting *Phillips*, 415 F.3d at 1318).  For example, "[e]xtrinsic sources . . . might have been written for an audience

7

different from persons of ordinary skill in the art; they might suffer from litigation bias; and relatedly, they might have been selectively plucked from the unbounded universe of potentially relevant material to advance a litigant's position." *Id.* at 1372-73.

## B. The Construction of Design-Patent Claims

Design patents — as opposed to utility patents — present unique considerations in the claim-construction context. "As the Supreme Court has recognized, a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)). For this reason, "a court translating a design patent claim into a verbal description risks 'placing undue emphasis on particular features of the design and . . . risk[s] that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole.'" *Prestige Jewelry Int'l, Inc. v. BK Jewellery HK*, No. 11-cv-02930 (LAP), 2014 WL 11344395, at *8 (S.D.N.Y. Sept. 15, 2014) (quoting *Egyptian Goddess*, 543 F.3d at 680). Given the precarity of "trying to describe a design in words," the Federal Circuit recognized in *Egyptian Goddess* that "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess*, 543 F.3d at 679.

"While it may be unwise to attempt a full description of the claimed design," a court may endeavor to "usefully guide the finder of fact by addressing a number of other issues that bear on the scope of the claim" or by "point[ing] out . . . various features of the claimed design as they relate to the accused design and the prior art." *Id.* at 680. This may involve "describing the role of particular conventions in design patent drafting, such as the role of broken lines; assessing and describing the effect of any representations . . . made in the course

8

of the prosecution history; and distinguishing between those features of the claimed design

that are ornamental and those that are purely functional." *Id.* (citations omitted) (first citing

37 C.F.R. § 1.152; then citing *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*,

162 F.3d 1113, 1116 (Fed. Cir. 1998); and then citing *OddzOn Prods., Inc. v. Just Toys, Inc.*,

122 F.3d 1396, 1405 (Fed. Cir. 1997)).

## III.    THE ASSERTED PATENTS ARE NOT INDEFINITE

As a threshold matter, the Court will address Apple's first arguments that the Asserted

Patents are indefinite.  Apple Br. at 9.  Because a "lack of definiteness renders invalid 'the

patent or any claim in suit,'" *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 902

(2014) (quoting 35 U.S.C. § 282(b)), a finding of indefiniteness as to the Asserted Patents

would render further construction unnecessary.  Apple's indefiniteness arguments revolve

around the two aforementioned groupings of the Asserted Patents: the '802, '805, and '808

Patents (Apple's A-1 Construction); and the '803, '804, '806, and '807 Patents (Apple's A-2

Construction).  Apple Br. at 10, 16.

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification

delineating the patent, and the prosecution history, fail to inform, with reasonable certainty,

those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901.  "[I]n the

design patent context, one skilled in the art would assess indefiniteness from the perspective

of an ordinary observer." *In re Maatita*, 900 F.3d 1369, 1377 (Fed. Cir. 2018).  "Thus, a

design patent is indefinite under [35 U.S.C. § 112] if one skilled in the art, viewing the design

as would an ordinary observer, would not understand the scope of the design with reasonable

certainty based on the claim and visual disclosure." *Id.*  The standard for indefiniteness is

"exacting," *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008),

and the challenging party has "the burden of proving indefiniteness by clear and convincing

evidence," *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). "The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable," *Nautilus*, 572 U.S. at 910, and "a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement," *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) (quoting *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1341 (Fed. Cir. 2003)). "[T]he certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Nautilus*, 572 U.S. at 899 (quoting *Minerals Separation, Ltd. v. Hyde*, 242 U.S. 261, 270 (1916)); *see also Vascular Sols. LLC v. Medtronic, Inc.*, 117 F.4th 1361, 1369 (Fed. Cir. 2024) ("The claims of a patent 'must be precise enough to afford clear notice of what is claimed, thereby appris[ing] the public of what is still open to them.'" (alteration in original) (quoting *Nautilus*, 572 U.S. at 909)).

For the following reasons, the Court holds that the Asserted Patents are not indefinite and declines to adopt Apple's A-1 and A-2 Constructions.

**A.  The '802, '805, and '808 Patents Are Not Indefinite**

Apple first argues in its A-1 Construction that "the '802, '805, and '808 Patents are indefinite because the claims do not indicate whether the even-length broken-line portions of the design that appear within the solid-line arcs "are unclaimed boundary lines or portions of the graphical user interface" (the "GUI"). Apple Br. at 10. For support, Apple points to the Manual of Patent Examining Procedure ("MPEP"),[1] which explains that "[b]roken lines can

---

[1] "While USPTO references like the MPEP are not legally binding, courts may consider them as instructive interpretations of patent law." *Sure Fit Home Prods., LLC v. Maytex Mills, Inc.*, No. 21-cv-02169 (LGS), 2021 WL 4790580, at *2 n.1 (S.D.N.Y. Oct. 14, 2021) (citing *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017)).  Both parties refer to the MPEP.

be either environmental lines or boundary lines."  *Id.* at 11 (citing MPEP § 1503.02(III)); *see also* MPEP § 1503.02(III) ("The two most common uses of broken lines are to disclose the environment related to the claimed design and to define the bounds of the claim.").  These disputed even-length broken lines are annotated in red in Apple's proposed constructions and appear inside the solid-line arcs:



Dkt. 79-10 at 30-32 (cropped to emphasize annotations) (annotating the '802, '805, and '808 Patents respectively).

Although each Asserted Patent references only one kind of even-length broken line ("[t]he even-length broken lines illustrating portions of the graphical user interface," *see* Asserted Patents at description), Apple suggests that there may be two kinds of even-length broken lines in each figure: those outside the solid-line arcs (illustrating the unclaimed GUI environment) and those within the solid-line arcs (illustrating boundary lines of the claimed design).  *See* Dkt. 81 ("Klemmer Decl.") ¶ 41 ("If the Red Broken Lines are unclaimed *environment* lines, then area inside the solid lines is claimed.  By contrast, if the Red Broken Lines are *boundary* lines, then they indicate a boundary between claimed and unclaimed subject matter and everything inside of the Red Dashed Lines is *disclaimed*.").  Because of the ambiguity that would result from these two incompatible interpretations, Apple argues that the claims "fail[] to provide a POSITA with reasonable certainty about the scope of the claim" and are thus invalid.  Apple Br. at 10.

It is true, as Apple asserts and as the MPEP counsels, that "it is critical that the description of the broken lines in the specification explicitly identifies their purpose so that the scope of the claim is clear."  MPEP § 1503.02(III); *see* Apple Br. at 11.  The Asserted Patents provide sufficient clarity.  Turning first to the intrinsic evidence, as this Court must, the prosecution history of the Asserted Patents confirms the more straightforward reading that all of the even-length broken lines illustrate portions of the unclaimed GUI.  The Patent Examiner who issued the Asserted Patents already addressed this question head-on: in the Notice of Allowance for each Asserted Patent, the Examiner offered an amendment to the description — which Shunock ultimately adopted — to dispel any "ambiguity as to whether [the even-length broken lines] show graphical elements or boundaries of the claim."  *See, e.g.*, Dkt. 79-13 at 8 (replacing phrase "broken line regions" with "broken lines"); *see* Dkts. 79-14 to -19 (same for other Asserted Patents).  The suggested amendment reflected "the examiner's understanding that the even-length broken lines [in the Asserted Patents] show portions of the graphical user interface, and not claim boundaries."  Dkt. 79-13 at 8.

The Court affords significant weight to the Patent Examiner's assessment as reflected in her amendments.  *See e-Numerate Sols., Inc. v. United States*, 149 Fed. Cl. 563, 573 & n.3 (2020) (explaining the "presumption of validity" afforded to issued patents based on the "deference that is due to a [Patent Examiner] presumed to have performed [her] job correctly" (citation omitted)).  Were a POSITA to be confused as to the purpose of the even-length broken lines in the Asserted Patents, despite the relatively plain language in the descriptions, such ambiguity could be resolved upon review of the prosecution history, which makes it clear that all even-length broken lines — both inside and outside of the arcs, given the examiner's lack of differentiation and the plain language of the description — are environmental lines that illustrate underlying unclaimed GUI elements rather than boundary

lines. *See, e.g.*, Dkt. 79-13 at 8 (Examiner's amendment for '802 Patent). Even though Apple's expert may argue otherwise, "[t]he submission of expert testimony attesting to the indefiniteness of a term is not conclusive." *Nanobebe US Inc. v. Mayborn (UK) Ltd.*, No. 21-cv-08444 (JLR), 2023 WL 2986936, at *11 (S.D.N.Y. Apr. 18, 2023).

Despite the relatively straightforward prosecution history that supports the descriptions' most obvious reading — that all even-length broken lines illustrate portions of the unclaimed GUI environment — Apple and its expert argue that "the record presents contradicting evidence for both [readings] without providing reasonable certainty." Klemmer Decl. ¶ 42. For example, Apple suggests that Shunock "purported to disavow" the Examiner's understanding in his comments on the Examiner's statements of reasons for allowance. Apple Br. at 14; *see, e.g.*, Dkt. 82-1 at 4 ("Applicant seeks full protection of the design rights that is afforded by the design patent laws and asserts that [the '802 Patent] should not be limited by any interpretation as to what the examiner believes regarding what is being sought . . . ."). But Shunock disavowed only the Examiner's statement of reasons for allowance, which is a distinct section of the Notice of Allowance from the Examiner's amendment. *Compare* Dkt. 82-1 at 6 ("The following is an examiner's statement of reasons for allowance . . . ."), *with id.* at 7 ("An examiner's amendment to the record appears below . . . ."). In any case, Shunock's seemingly boilerplate disavowal of the Examiner's understanding is of little relevance to this particular broken-line dispute given that Shunock adopted the Examiner's amendments. *Compare* Dkts. 79-13 to -19 at 3 (proposing Examiner's amendments), *with* Asserted Patents at description (adopting Examiner's amendments). The Examiner expressly advised Shunock that if her amendments were "unacceptable to applicant," he could file an amendment "no later than the payment of the issue fee." Dkt. 82-1 at 7 (citing 37 C.F.R. § 1.312). He did not do so.

13

Apple also argues that the '802, '805, and '808 Patents would be "inconsistent with one another, and with the other four Asserted Patents," if the internal even-length broken lines were environmental, because "a POSITA would expect the lines to be visible within the same corresponding arc across all Asserted Patents, but that is not the case." Apple Br. at 13. While inconsistent figures within the same design patent may render a claim indefinite, *see, e.g.*, *Times Three Clothier, LLC v. Spanx, Inc.*, No. 13-cv-02157 (DLC), 2014 WL 1688130, at *6-9 (S.D.N.Y. Apr. 29, 2014), it does not follow that a claim should be rendered indefinite because they are inconsistent with figures in a different design patent.[2] *See In re Maatita*, 900 F.3d at 1375-76 ("A visual disclosure may be inadequate — and its associated claim indefinite — if it includes multiple, *internally* inconsistent drawings," but not if the inconsistencies "'do not preclude the overall understanding of the drawing as a whole.'" (emphasis added) (first citing *Times Three Clothier*, 2014 WL 1688130, at *7-9; and then quoting *Ex parte Asano*, No. 2017-2037, 1978 WL 21280, at *2 (B.P.A.I. Nov. 27, 1978))); *Ting v. Covina Accessories, LLC*, No. 19-cv-06431, 2022 WL 20809320, at *4 (C.D. Cal. Apr. 25, 2022) (denying summary judgment on indefiniteness where "[d]efendants provide[d] no authority for the proposition that invalidity may be shown by comparing the drawings from two different patents").

In any case, the Court is not convinced that the broken lines are employed inconsistently between the Asserted Patents. In the '802, '805, and '808 Patents, the arcs are not filled in, so the underlying GUI environment is visible, and thus the environmental broken

---

[2] Apple relies on *Times Three Clothier* for the proposition that "material inconsistencies in the claimed design across different drawings can render a design patent invalid," Apple Br. at 10, but that case involved multiple inconsistent drawings within a single patent, not inconsistent drawings across several distinct patents, *see* 2024 WL 1688130, at *6-9, which is the basis of Apple's argument here.

lines are also visible.  In contrast, in the '803, '804, '806, and '807 Patents, the arcs are depicted with a contrast in appearance and are filled in, so the underlying GUI is not visible, and thus the environmental broken lines are not visible.  *Cf.* U.S. Patent No. D621,848 fig. 2 (issued Aug. 17, 2010) (design patent for Apple keyboard showing solid-line element covering over broken lines illustrating GUI), *as reprinted in* Jason J. Du Mont & Mark D. Janis, *Virtual Designs*, 17 Stan. Tech. L. Rev. 107, 127 (2013).  This reading is consistent with the plain language of the descriptions, which indicate that all even-length broken lines illustrate the unclaimed GUI environment.

In further support of its A-1 Construction, Apple cites to the deposition testimony of Michael R. Gottschalk, a coinventor of the Asserted Patents, who expressed that he did not "have any understanding of the significance of . . . the dashes lines."  *See* Apple Br. at 16 n.9 (quoting Dkt. 82-12 at 93:12-19).  However, "[w]itnesses' ignorance of drafting conventions, which are detailed in the [MPEP], does not establish that the patents cannot be construed so as to clearly delineate what design is claimed."  *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 932 F. Supp. 2d 1076, 1088 (N.D. Cal. 2013) (rejecting Samsung's argument that inventor's inability to interpret the patent drawing renders a patent indefinite); *see also Oakley*, 316 F.3d at 1342 n.2 (inventor testimony is "of little value in the definiteness analysis or claim construction" (citing *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379-80 (Fed. Cir. 2000))); *Solomon*, 216 F.3d at 1379 ("It is particularly inappropriate to consider inventor testimony obtained in the context of litigation in assessing [indefiniteness], in view of the absence of probative value of such testimony.").

Finally, Apple argues that the Asserted Patents are ambiguous to the point of indefiniteness because the even-length broken lines within the solid-line arcs "appear nowhere in the Priority Application, and there are no [GUI] elements at those locations in the Priority

Application that could have become disclaimed environmental lines." Apple Br. at 17. However, the embodiments in the Priority Application are explicitly exemplary, *see* Dkt. 82-13 at 25:31-26:2, and at least in the utility-patent context, the Federal Circuit has "repeatedly warned against confining . . . claims to those embodiments," *Phillips*, 415 F.3d at 1323; *see also SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) ("The law does not require the impossible. Hence, it does not require that an applicant describe in his specification every conceivable and possible future embodiment of his invention."). In any case, because the Patent Examiner's clarification and amendment of the design patents would allow a POSITA to "understand the scope of the design with reasonable certainty," *In re Maatita*, 900 F.3d at 1377, the Court finds that the even-length broken lines do not render the Asserted Patents indefinite. The Priority Application's impact on Plaintiff's continuation claim can be dealt with during further motion practice or at trial. *See Nextec Applications v. Brookwood Cos., Inc.*, 703 F. Supp. 2d 390, 432 n.28 (S.D.N.Y. 2010) (declining to import claim limitation from priority application because priority "is a separate legal issue from claim construction, and is to be analyzed separately after the claims have been construed" (citing *Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1336 (Fed. Cir. 2010); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 911-12 (Fed. Cir. 2004))), *aff'd sub nom. Nextec Applications, Inc. v. Brookwood Cos., Inc.*, 542 F. App'x 995 (Fed. Cir. 2013) (summary order); *see also Liebel-Flarsheim*, 358 F.3d at 911-12 ("[B]ecause the proper construction of the claims is clear, the questions of priority and validity are separate issues that must be separately addressed on remand.").

Accordingly, the Court finds that Apple has not met its burden to establish by clear and convincing evidence that the '802, '805, and '808 Patents are indefinite, and thus rejects Apple's A-1 Construction.

**B. The '803, '804, '806, and '807 Patents Are Not Indefinite**

Apple next suggests in its proposed A-2 Construction that the '803, '804, '806, and '807 Patents are indefinite due to the following language found in their descriptions: "The grayscale contrast between the [two / three] shaded regions represents a contrast in appearance." Apple Br. at 16 (emphasis omitted) (quoting '803, '804, '806, and '807 Patents at description). Specifically, Apple argues that "a POSITA cannot tell with reasonable certainty what is or is not 'a contrast in appearance,' such that the patents fail to sufficiently indicate the outer bounds of the claimed 'contrast.'" *Id.* at 17 (quoting Klemmer Decl. ¶ 55). The Court does not agree that this description renders the Asserted Patents indefinite.

The Court finds that the "ordinary and customary meaning," *Phillips*, 415 F.3d at 1313, of the term "contrast in appearance" is sufficiently clear here and does not require the precise means or mode of contrast to be specified. *See, e.g.*, *Times Three Clothier*, 2014 WL 1688130, at *5 (declining to construe "different appearance" to mean "contrasting materials" where the patent contained no such limitation); *Simmons Bedding Co. v. Sealy Tech. LLC*, No. 18-3420, 2018 WL 2933452, at *2 (P.T.A.B. June 1, 2018) (declining to specify "what level of contrast is necessary" and finding "contrast" to mean only "of differing appearance" not limited by fabric, color, pattern, or texture); *Sealy Tech., LLC v. SSB Mfg. Co.*, 825 F. App'x 795, 798 (Fed. Cir. 2020) (finding that the term "contrasting appearance" in a design meant only "differing appearance, which may be achieved by such means as 'contrasting fabric, contrasting color, contrasting pattern, and contrasting texture'" (quoting *Simmons*, 2018 WL 2933452, at *2)); *see also* MPEP § 1503.02(II) ("Contrast in materials may be shown by using line shading in one area and stippling in another. By using this technique, the claim will broadly cover contrasting surfaces unlimited by colors. The claim would not be limited to specific material either, as long as the appearance of the material does not patentably depart

17

from the visual appearance illustrated in the drawing.").  While the term may be broad, "breadth is not indefiniteness."  *BASF Corp.*, 875 F.3d at 1367 (quoting *Smithkline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005)).

Apple is not arguing — nor could it, given its own design patents, *see* Dkts. 79-20 to -24 at description (employing the term "contrast in appearance" in Apple's design-patent descriptions) — that a claim that includes the language "contrast in appearance" is *per se* indefinite.  *See* Apple Br. at 16.  Instead, Apple argues that the Asserted Patents are indefinite because, unlike its own priority applications, *id.* at 18-19, Shunock's Priority Application "includes no support for the 'contrast' limitation," *id.* at 17 (citing Dkt. 82-13).  As a threshold matter, the priority application for Apple's '897 Patent, for example, reflects only that "[c]olor and texture may or may not form part of the claimed design without departing from the design disclosed," Dkt. 80-14 at 9, which does not clarify whether the "grayscale shading [that] represents a contrast in appearance" as shown and described in the '897 Patent, Dkt. 79-20 at 1, is with respect to color, texture, pattern, or something else.  In other words, Apple's priority application provides no more textual support for a particularized contrast limitation in Apple's design patent than Shunock's Priority Application provides for the contrast limitation in his Asserted Patents.  In addition, it is not clear that the Priority Application here fails to reference or depict a contrast in appearance.  The Priority Application's revised Figure 13 clearly shows a contrast in appearance between the arcs.  *See* Dkt. 82-1 at 54.  While the parties disputed at the *Markman* hearing whether the original Figure 13 filed with the Priority Application showed a similarly perceptible contrast in the copies presented as exhibits during the hearing, *see* Markman Tr. at 136:13-19, 154:24-155:10, 156:11-20, the Court finds that at least some portrayals of the original figure in the record depict a grayscale contrast in appearance between the arcs, *see, e.g.*, Dkt. 82-13 at 43.

Finally, even if there were no contrast in shading in the Priority Application, Apple provides no authority for its argument that "contrast in appearance" in the Asserted Patents renders them indefinite because the Priority Application for a utility patent did not "explain the applied patterns." Apple Br. at 17-18. Whether the design patents at issue here claim new matter from that claimed in the Priority Application may be the subject of future motions regarding priority and continuation, but Apple has not provided any authority to demonstrate that this renders the design patents indefinite at the claim-construction stage.

Apple argues through its expert that "a POSITA cannot answer . . . with reasonable certainty" whether the term "'contrast in appearance,' in the '803, '804, '806, and '807 patents, encompass[es] different positions, different radii of curvature, other differences, and/or a combination thereof." Klemmer Decl. ¶ 59. But Apple does not explain why a POSITA should look beyond the illustrations, which clearly show that the arcs are not contrasting in curvature or positioning. *See In re Mann*, 861 F.2d at 1582 ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings."). Here, relying on Apple's expert to depart from the "ordinary and customary meaning," *Times Three Clothier*, 2014 WL 1688130, at *3, of the term "contrast in appearance" would inject ambiguity into the patent that does not otherwise exist. *See Seoul Viosys Co. v. P3 Int'l Corp.*, No. 16-cv-06276 (AJN), 2017 WL 4011493, at *23 (S.D.N.Y. Sept. 11, 2017) ("If the patent documents (*the plain language of the patent*, the specification, and the prosecution history) are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight." (emphasis added)).

The Court finds that the term "contrast in appearance" in the Asserted Patents is sufficiently unambiguous to alert a POSITA of the scope of the claim. Thus, Apple has not

met its burden to establish by clear and convincing evidence that the '803, '804, '806, and '807 Patents are indefinite, and the Court rejects Apple's A-2 Construction.

## IV.    SHUNOCK'S PROPOSED TERM CONSTRUCTIONS ARE UNNECESSARY

Shunock asks the Court to construe two terms found in all seven Asserted Patents: "design for a display screen" and "graphical user interface." Chart at 8. Apple responds that "[b]oth constructions are improper because they attempt to impermissibly remove limitations and are unnecessary." Apple Br. at 35. For the reasons outlined below, the Court agrees with Apple that no construction of these terms is necessary.[3]

Shunock first proposes construing "design for a display screen" to mean "design meant to be shown or appear on a display screen." Chart at 8. The Court agrees with Apple that construction is not necessary here, largely because "design for a display screen" (and especially the word "for," which is the only word Shunock seeks to replace with additional language) is "neither ambiguous nor highly technical." *Revlon Consumer Prods. Corp. v. Estee Lauder Cos., Inc*., No. 00-cv-05960 (RMB) (AJP), 2003 WL 21751833, at *14 (S.D.N.Y. July 30, 2003); *see also Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc*., No. 13-cv-03767 (NSR), 2015 WL 221063, at *1 (S.D.N.Y. Jan. 14, 2015) (declining to hold a *Markman* hearing to construe claim terms that are "clear, unambiguous, and non-technical"). Shunock does not present evidence to the contrary. A "display screen with graphical user interface" is not an unusual article of manufacture for a design patent, and a POSITA would understand the scope of this term by its ordinary and customary meaning. *Cf. Apple, Inc. v. Samsung Elecs. Co*., No. 11-cv-01846, 2012 WL 3071477, at *10 (N.D. Cal. July 27, 2012) (construing patent claim as "ornamental design for a graphical user interface for a display

---

[3] Neither party addressed the proposed constructions of these terms at the *Markman* hearing, but the Court presumes that they are still at issue given the briefing.

screen or portion thereof"); *WePay Glob. Payments LLC v. McDonald's Corp.*, No. 22-cv-01064, 2022 WL 17279115, at *1 (N.D. Ill. Nov. 29, 2022) (analyzing patent for "ornamental design for a display screen portion with animated graphic user interface"). And, as Apple notes, replacing "for" with "meant to be shown or appear on" risks "[i]njecting subjective intention" into the claim, which creates indefiniteness. Apple Br. at 35 (citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014)); *see also Nanobebe*, 2023 WL 2986936, at *12 ("Introducing the intent of the designer into claim construction injects needless subjectivity, confusion, and irrelevance."). Accordingly, the Court declines to risk injecting subjective intention into the claim to construe terms that are neither ambiguous nor highly technical.

For largely the same reasons, the Court rejects Shunock's proposal to construe "graphical user interface" as "a computer environment that allows users to interact with software applications through visual elements, such as icons and visual indicators." Chart at 8. The term "graphical user interface" is, likewise, "neither ambiguous nor highly technical," *Revlon*, 2003 WL 21751833, at *14, and Shunock does not explain why it might be. Further, claim terms "are construed from the skilled artist's perspective," *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 166 F. Supp. 3d 364, 378 (S.D.N.Y. 2016), and it strains credulity to believe that a POSITA in the field of graphic design would not understand the meaning of the common term "graphical user interface" in a design patent for a display screen with GUI. *See, e.g.*, *Apple*, 2012 WL 3071477, at *10; *WePay*, 2022 WL 17279115, at *1.

Indeed, recent supplemental guidance from the USPTO provides that claim language that "adequately describes a design for an article of manufacture" under 35 U.S.C. § 171 includes a "display panel with GUI" and "a display screen with . . . a GUI," which tracks the language used here. *See* Supplemental Guidance for Examination of Design Patent

Applications Related to Computer-Generated Electronic Images, Including Computer-Generated Icons and Graphical User Interfaces, 88 Fed. Reg. 80277, 80279 (Nov. 17, 2023).

## V.    THE ASSERTED PATENTS DO NOT PROTECT FUNCTIONALITY

Before turning to Apple's three annotation-based constructions and Shunock's responsive constructions, the Court next addresses Apple's Non-Functionality Construction, which proposes for each Asserted Patent that the "scope of the design claim does not include or relate to functionality."  Apple Br. at 27; *see* Chart at 1-8.  Shunock argues that this construction is unnecessary because he "has never claimed his patents protect functionality." Shunock Reply Br. at 12.  But it is well within a district court's discretion to "guide the finder of fact" by "distinguishing between those features of the claimed design that are ornamental and those that are purely functional." *Egyptian Goddess*, 543 F.3d at 680.  Shunock acknowledges that the Asserted Patents are purely ornamental, *see* Shunock Br. at 12, and the Court sees no harm in including Apple's proposed language to ensure the jury does not unduly "read functionality into the Asserted Patents," Apple Br. at 27 (quoting Shunock Br. at 31). *See also* Markman Tr. at 24:8-13 (Counsel for Shunock: agreeing that there is "no dispute between the parties" regarding whether to "inform[] the jury . . . that the scope of the design claim does not include or relate to functionality").  Accordingly, the Court adopts Apple's Non-Functionality Construction.

## VI.    THE REMAINING PROPOSED CONSTRUCTIONS

Having found that the Asserted Patents are not indefinite, that the terms within each description need not be construed in the manner that Shunock suggests, and that the disputed claims should be construed to clarify that they do not include or relate to functionality, the Court now addresses Apple's annotation-based constructions — the A-3, A-4, and A-5 Constructions — and Shunock's responsive constructions.  For the reasons set forth below,

the Court declines to adopt either party's approach in full. Instead, the Court will follow the lead of the other "[d]istrict courts following *Egyptian Goddess*" and "rel[y] on patent drawings to construe [the] design claims" rather than on verbal descriptions and superfluous annotations that may risk confusing a jury. *Wing Shing Prods. (BVI) Co. v. Sunbeam Prod., Inc.*, 665 F. Supp. 2d 357, 360 (S.D.N.Y. 2009) (collecting cases), *aff'd per curiam*, 374 F. App'x 956 (Fed. Cir. 2010).

### A. Apple's Annotation-Based Constructions

Apple's A-3, A-4, and A-5 Constructions propose annotated figures that are not necessary. First, for its A-3 Construction, Apple proposes that "the 'claimed display screen includes the area shaded in red [in Apple's accompanying annotations] but does not include the uneven-length broken line.'" Apple Br. at 20.



*Id.* (annotating '802 Patent at fig.). Apples reasons that this construction is necessary because the claim language "recites 'a display screen with graphical user interface,'" *id.* at 21, and "the USPTO requires design patents to recite an article of manufacture," *id.* at 20 (citing 35 U.S.C. § 171).

Next, for its A-4 Construction, Apple proposes that the "design claim includes the relative position of the solid line elements to the claimed display screen area shaded in blue" in its accompanying annotations. Apple Br. at 23.



*Id.* (annotating '802 Patent at fig.).  To support its position, Apple explains that "[t]his proposed construction seeks to reinforce that the claimed designs are fixed, static representations that include the relative position (in, e.g., size and orientation) of the solid line elements to the surrounding screen surface area (in blue annotation)."  Apple Br. at 23.

Lastly, for its A-5 Construction, Apple proposes that the "top, bottom, left, and right sides of the display screen are as indicated" in its accompanying annotations.  Apple Br. at 25.



*Id.* (annotating '802 Patent at fig.).  Apple reasons that unlike, say, a fabric-pattern design, *see, e.g.*, *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories*, 202 F. Supp. 3d 1186, 1194-95 (D. Or. 2016), *aff'd in part, rev'd in part, and remanded*, 942 F.3d 1119 (Fed. Cir. 2019), a "display screen . . . as claimed here requires a particular orientation."  Apple Br. at 26-27; *see* Klemmer Decl. ¶ 68 ("It would not make sense to a POSITA to have the letters

24

and people be vertical, or upside down, because it would hinder legibility and comprehension.").

### B. Shunock's Responsive Constructions

Shunock objects to these constructions. His proposed construction for each Asserted Patent is more straightforward: "'the ornamental design for a display screen with graphical user interface, as shown and described,' along with the illustrated figure." Shunock Br. at 14 (quoting Asserted Patents at claim). The claim-construction chart seems to indicate that Shunock also seeks to excise the unclaimed portions of the designs such that the claims are construed with an illustration that does not include the broken lines, as set forth below:



Chart at 1, 4, 7 (top row: excising broken lines from '802, '805, and '808 Patents, respectively); *id.* at 2-3, 5-6 (bottom row: excising broken lines from '803, '804, '806, and '807 Patents, respectively).

### C. The Court's Approach to Construction

"[A] district court's decision regarding the level of detail to be used in describing the claimed design is a matter within the court's discretion . . . ." *Prestige Jewelry*, 2014 WL

11344395, at *8 (quoting *Egyptian Goddess*, 543 F.3d at 680).  Rather than complicate the visual claims at issue with unneeded verbal descriptions, excisions, or annotations that risk "placing undue emphasis on particular features of the design," *Egyptian Goddess*, 543 F.3d at 680, the Court elects to let the illustrations in the Asserted Patents serve as their "own best description," *id.* (quoting MPEP § 1503.01).  The Court believes that this approach to construction is most appropriate here because it ensures that the "focus is on [the] overall appearance" of each design "and the visual impression it creates."  *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 11-cv-07211 (PGG), 2012 WL 3031150, at *4 (S.D.N.Y. July 25, 2012) (quoting *Blumenthal Distrib., Inc. v. Exec. Chair, Inc.*, No. 10-cv-01280 (CBA), 2010 WL 5980151, at *5 (E.D.N.Y. Nov. 9, 2010)); *see also Egyptian Goddess*, 543 F.3d at 679-80; *cf. Wing Shing Prods.*, 665 F. Supp. 2d at 360 (construing design patent claim as "the ornamental design for a coffeemaker, as shown in figures 1 through 7 of the . . . patent").

Apple's proposed constructions seek to "clarify," "reinforce," or "confirm" various aspects of the disputed claims, Apple Br. at 20, 23, 25, but they are largely superfluous and risk unduly emphasizing certain features of the designs.  For example, Apple suggests that its A-3 Construction is necessary because the "USPTO requires design patents to recite an article of manufacture."  Apple Br. at 20 (citing 35 U.S.C. § 171).  But here, the Asserted Patents clearly recite an article of manufacture — "a display screen with graphical user interface" — and depict it in broken lines, which conforms with the USPTO's approach and renders Apple's annotations unnecessary.  *See* MPEP § 1504.01(a)(I)(B) ("[A] claim and title directed to a display screen with an icon or a GUI adequately describes a design for an article of manufacture under 35 U.S.C. 171." (citing *Ex parte Strijland*, No. 92-0623, 1992 WL 470727 (B.P.A.I. Apr. 2, 1992))); *see also Ex parte Strijland*, 1992 WL 470727, at *4 ("The article [a display screen of a programmed computer system] may be shown with broken lines."); *cf.*

26

*Apple*, 2012 WL 3071477, at \*8 ("[Apple's] D'305 Patent states that: 'The broken line

showing of a display screen in both views forms no part of the claimed design.' Accordingly,

broken line disclaimer will be included in the Court's claim construction."). The Court also

finds it unnecessary to adopt Apple's A-4 Construction to describe or "reinforce," Apple Br.

at 23, what is already evident from the illustrations — that is, the relative positions of the

various elements of the design. Likewise, the Court rejects Apple's A-5 Construction, which

seeks to add annotations to the design illustration, an approach for which the Court does not

find support in the case law. The Court finds it unnecessary to complicate construction with

verbal descriptions and annotations when the illustrations within the four corners of the

Asserted Patents can speak for themselves.[4]

    Turning next to Shunock's proposed constructions, the Court agrees that adhering to

the approach of *Egyptian Goddess* is the most appropriate course of action here given that the

designs are not particularly complicated. *See* Shunock Br. at 11-15. However, the Court will

not excise the unclaimed subject matter from the figures and will construe the claims with the

entire illustration for each Asserted Patent. First, Shunock argues that his design patents

essentially speak for themselves by referencing the design "as shown and described." *Id.* at

14; *see* Chart at 1-7. Therefore, removing part of the drawing "as shown" is not appropriate.

Second, "a picture standing alone is not protectable by a design patent. The factor which

distinguishes statutory design subject matter from mere pictures or surface ornamentation per

se (i.e., abstract designs) is the embodiment of the design in an article of manufacture." *Ex

parte Strijland*, 1992 WL 470727, at \*2. Because "merely illustrating a picture displayed on

---

[4] At this juncture, the Court does not consider Apple's cross-referenced obviousness
arguments, *see* Chart at 26, 29 (citing Apple's Initial Invalidity Contentions, Dkt. 79-9),
which present distinct considerations that need not be addressed at the claim-construction
stage. Arguments regarding continuation and priority can also be raised in future proceedings.

the screen of a computer or other display device" is not "sufficient, alone, to convert a picture into a design for an article of manufacture," *id.* at *4, "a computer icon or a GUI must be embodied in a display panel, or portion thereof, to satisfy" the article of manufacture requirement, MPEP § 1504.01(a)(I)(A) (applying *Ex parte Strijland*, 1992 WL 470727); *see also* Du Mont & Janis, *supra*, at 124 ("The [USPTO's] guidelines . . . decline to step beyond *Strijland* . . . in that they maintain that examiners should reject claims to virtual designs per se, ones that are not accompanied by at least a broken-line representation of a computer display or the like." (citing MPEP § 1504.01(a))). Therefore, excising the display screen with GUI would not be appropriate. Third, the descriptions in the Asserted Patents already make it clear which elements of the illustrations are and are not claimed, and showing the jury only the claimed elements divorced from the context of the rest of the patent risks "placing undue emphasis on particular features of the design." *Egyptian Goddess*, 543 F.3d at 680.

That said, "a trial court can usefully guide the finder of fact by . . . describing the role of particular conventions in design patent drafting, such as the role of broken lines," *id.*, so rather than omit the broken lines, the Court will use its discretion under *Egyptian Goddess* to guide the jury by clarifying the purpose of each set of broken lines with the language found in the description of each Asserted Patent. *Compare, e.g.*, U.S. Patent No. D593,087 (D'087 Patent from *Apple v. Samsung* litigation), at 3 ("None of the broken lines form a part of the claimed design."), *with Apple*, 2012 WL 3071477, at *6 (construing claim to clarify that "[t]he broken lines in the D'087 Patent constitute unclaimed subject matter").

### D. The Final Adopted Constructions

For the foregoing reasons, the Court does not find the Asserted Patents indefinite, does not construe any written terms in the Asserted Patents, does not adopt any of the parties' annotations or deletions, and combines Shunock's proposed construction and Apple's proposed

Non-Functionality Construction for the Asserted Patents with the language below, followed by the complete Figure that is depicted in each patent:

- "The '802 Patent claims the ornamental design for a display screen with graphical user interface, as shown in the Figure. The even-length broken lines illustrating portions of the graphical user interface form no part of the claimed design. The uneven-length broken line illustrating a display screen forms no part of the claimed design. The scope of the design claim does not include or relate to functionality."

- "The '803 Patent claims the ornamental design for a display screen with graphical user interface, as shown in the Figure. The grayscale contrast between the three shaded regions represents a contrast in appearance. The even-length broken lines illustrating portions of the graphical user interface form no part of the claimed design. The uneven-length broken line illustrating a display screen forms no part of the claimed design. The scope of the design claim does not include or relate to functionality."

- "The '804 Patent claims the ornamental design for a display screen with graphical user interface, as shown in the Figure. The grayscale contrast between the two shaded regions represents a contrast in appearance. The even-length broken lines illustrating portions of the graphical user interface form no part of the claimed design. The uneven-length broken line illustrating a display screen forms no part of the claimed design. The scope of the design claim does not include or relate to functionality."

- "The '805 Patent claims the ornamental design for a display screen with graphical user interface, as shown in the Figure. The even-length broken lines illustrating portions of the graphical user interface form no part of the claimed design. The uneven-length broken line illustrating a display screen forms no part of the claimed design. The scope of the design claim does not include or relate to functionality."

- "The '806 Patent claims the ornamental design for a display screen with graphical user interface, as shown in the Figure. The grayscale contrast between the two shaded regions represents a contrast in appearance. The even-length broken lines illustrating portions of the graphical user interface form no part of the claimed design. The uneven-length broken line illustrating a display screen forms no part of the claimed design. The scope of the design claim does not include or relate to functionality."

- "The '807 Patent claims the ornamental design for a display screen with graphical user interface, as shown in the Figure. The grayscale contrast between the three shaded regions represents a contrast in appearance. The even-length broken lines illustrating portions of the graphical user interface form no part of the claimed design. The uneven-length broken line illustrating a display

screen forms no part of the claimed design.  The scope of the design claim does not include or relate to functionality."

- "The '808 Patent claims the ornamental design for a display screen with graphical user interface, as shown in the Figure.  The even-length broken lines illustrating portions of the graphical user interface form no part of the claimed design.  The uneven-length broken line illustrating a display screen forms no part of the claimed design.  The scope of the design claim does not include or relate to functionality."

## VII.   CONCLUSION

For the foregoing reasons, the disputed claims, as set forth in the parties' claim-construction submissions and at argument, are construed as set forth above.

Dated: January 6, 2025
       New York, New York

SO ORDERED.

_Jennifer Rochon_
JENNIFER L. ROCHON
United States District Judge